Pamela **POWELL**, by her next friend, Charles Powell, and Charles Powell, Plaintiffs,

v.

**E. W. BLISS CO.,** Defendant.

Civ. A. No. 5933.

United States District Court, W. D. Michigan, S. D.

June 30, 1972.

Marcus, McCroskey, Libner, Reamon & Williams, for plaintiffs; J. Walter Brock, Muskegon, Mich., of counsel.

Varnum, Riddering, Wierengo & Christenson, Grand Rapids, Mich., for defendant; Peter A. Armstrong, Grand Rapids, Mich., of counsel.

OPINION AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT N. O. V. OR IN THE ALTERNATIVE FOR NEW TRIAL

FOX, Chief Judge.

This products liability action was tried before a jury which rendered a verdict for plaintiff in the amount of $75,000. Federal diversity jurisdiction has been established, and Michigan law is applicable. Presently before the court are defendant's alternative post-trial motions for judgment n. o. v. or new trial.

The general facts giving rise to this action may be easily summarized. Defendant E. W. Bliss Co. is a manufacturer of industrial punch presses. On August 25, 1966, defendant sold one of its 35-ton power presses to Keeler Brass Company. On August 1, 1967, plaintiff Pamela Powell began working for Keeler Brass as a small trim press operator. Late in the third day of her employment, on August 3, 1967, plaintiff was assigned to operate the 35-ton press.

The mechanism of this press included a flywheel which sustained momentum and continued to turn for several seconds even after all power to the press was disconnected. Thus, the press could make one or two cycles without power from an external source. The press was equipped, by Keeler Brass, with a device which mechanically attached plaintiff to the machine and was designed to pull her hands out of the machine when it was operating. This device consisted of a wire attached to the ram of the press, at one end, and to bracelets on plaintiff's wrists at the other end. The function of the device was to pull the operator's hands out of the zone of danger when the press cycled.

At the time of her injury, plaintiff was preparing to quit her work for the day. She removed the bracelet from her left wrist, as was necessary to reach the power switch, and then turned off the power to the machine. Shortly thereafter, Miss Powell's left arm was crushed and partially amputated by the press ram.

Just how plaintiff's arm came to be in the die area at the time of injury or how the press was prompted to descend when it did were never clearly resolved at trial. There were no witnesses to the accident, although fellow workers did arrive at the scene moments afterwards. Miss Powell was unable to remember the exact details of the circumstances immediately prior to her injury.

At trial, plaintiff argued that defendant should be held liable on the theories of implied warranty and negligence for failure to adequately guard against injuries of this kind, for failure to provide warning by sign or light of the danger which existed even after the machine was switched off and for failure to install an effective flywheel brake. Defendant advanced the position that the specific uses and kinds of dies employed by purchasers of its presses are so varied as to render incidents such as that involved in this case unforeseeable and very difficult to protect against at the manufacturing level. Defendant urged that any fault on its part was entirely superseded by the intervening failure of Keeler Brass to adequately protect its press operators with safety equipment appropriate to its industry. Bliss further argued that plaintiff's injuries were proximately caused by her own negligence and failure to guard against an obvious danger.

In support of its motion for judgment notwithstanding the jury verdict for plaintiff, defendant advances three grounds: (a) there was no evidence of negligence on the part of defendant; (b) defendant breached no duty owed to plaintiff; and (c) no act or omission on the part of defendant was a proximate cause of plaintiff's injuries. The court finds all three grounds to be lacking in merit.

Plaintiff's proofs on the subject of negligence definitely raised questions of fact for the jury. Whether the press was unreasonably hazardous in light of foreseeable dangers when it was sold was clearly put in issue at trial by the

evidence. The realistic possibilities for a better flywheel brake, better guarding devices and some kind of effective warning of the non-obvious danger of cycling even after the power was disconnected were all raised by plaintiff as examples of defendant's failure to exercise ordinary care in the manufacture of the machine in question.

■■ The legal duty of manufacturers such as the defendant to exercise reasonable and ordinary care in the design of safety features to protect against foreseeable dangers is well established. Byrnes v. Economic Machinery Co., Mich.App., 200 N.W.2d 104 (1972). Defendant may not simply pass all responsibilities on to plaintiff's employer, Keeler Brass. As the court ruled in Rhoads v. Service Machine Co., 329 F.Supp. 367, 376 (E.D.Ark., 1971):

"While the defendant may have thought that Al-Craft (plaintiff's employer) would have taken adequate precautions to protect its employees, or that it would be required to do so by its workmen's compensation insurance carrier or by regulatory agencies of the State of Arkansas, the Court does not think that as a matter of law defendant had a right to assume that protective devices would be provided."

In Rhoads the court elaborated that acts or omissions of the buyer-employer themselves may well be foreseeable and, hence, within the manufacturer's duty to anticipate.

■ Defendant is surely not entitled to a finding that any defects in its machine were patent and obvious as a matter of law. A young girl in plaintiff's position cannot be expected to appreciate subtle mechanical operations. Certainly the fact that the press might cycle even after the power to the press was disengaged was not patently obvious. No signs or warning lights gave notice of such a danger.

"Where a person must work in a place of possible danger, the care which he is bound to exercise for his own safety may well be less, due to the necessity of giving attention to his work, than is normally the case. * * * Defendant should not be able to escape liability if the risk to which plaintiff was exposed was unreasonable and foreseeable by the defendant." Byrnes v. Economic Machinery Co., supra.

With regard to the issue of proximate cause, the court merely notes again that the jury was thoroughly and properly instructed on the legal meaning and significance of probable cause, and the jury's decision of this question must stand. Specifically, the jury was carefully instructed that if they determined that subsequent acts or omissions by Keeler Brass constituted the sole proximate cause of plaintiff's injuries, they should return a verdict for the defendant. The jury was also instructed that misuse of defendant's machine by plaintiff should bar her recovery. The court notes, however, that no real factual issue as to misuse was raised by the evidence produced at trial. Misuse, as that concept is properly defined in Byrnes, supra, was not clearly established as a matter of law by any means. Just as in Byrnes, the plaintiff here had to remove the available guarding device in order to do her work—turn off the machine. The jury was fully instructed on the doctrine of contributory negligence and, nevertheless, proceeded to return a verdict for plaintiff.

For the reasons set forth above, therefore, defendant's motion for judgment n. o. v. must be and is hereby denied. The court further finds, upon careful examination of defendant's lengthy alternative motion for new trial and consideration of all the circumstances and factors involved in the trial of this cause, that said motion must also be denied.

In support for its motion for new trial, defendant first asserts that the verdict returned by the jury is "contrary to law" and "contrary to the weight of evidence." For the reasons set forth above and below herein, and for the reasons expressed by the court at trial, the .

court finds that the verdict in this case is consistent with governing principles of Michigan law. The court further notes the fundamental axiom that the weighing of evidence is exclusively a function for the trier of fact.

■ The essence of defendant's motion is to be found in seven specifications of purported error in the instructions given the jury by the court in this case. None of these specifications, however, bear scrutiny. Before addressing defendant's points in this regard in detail, the court makes the general observation that many of them concern the court's charges on implied warranty. While the court maintains the judgment that these charges conformed to the controlling Michigan law, it must stress that the jury verdict returned in this case specifically indicated that the basis of liability found by the jury was negligence. Hence, any defect in the court's instruction as to implied warranty would fail to establish grounds for overturning the jury verdict in this case or for ordering a new trial.

■ Defendant's first challenge to the jury instructions suffers the weakness just identified. While the court believes that its instruction relating the historical basis and purpose of implied warranty liability was a perfectly appropriate effort to assist the jury by giving some concrete meaning to an abstract legal theory, the overriding point here is that liability was not predicated upon implied warranty by the jury. Consequently, defendant's objection in this respect is largely irrelevant to the integrity of the jury verdict.

■ Defendant's second objection to the jury instructions is that the court improperly stated "that a warning must be given even if the danger is so slight that only a few have ever been injured." This objection inaccurately represents the record, however. In fact, the transcript reveals that the only instruction which corresponds to the language asserted as error by defendant actually stated: "The warning of the hazard should be given even if only a few users might be affected by the hazard." This is an accurate and fair statement of the law. Schedlbauer v. Chris Craft, 381 Mich. 217, 160 N.W.2d 889 (1968).

■ Defendant next objects to the court's instruction that defendant and Keeler Brass "could adjust the matter between themselves." The court's exact charge, as revealed by the transcript, was as follows:

"An intervening cause is an independent cause apart from any defect that could not reasonably be anticipated as the natural or probable result of the defendant's conduct. For example, if you find that a defect in the plaintiff's (sic) press proximately caused plaintiff's injury but that changes made in the product by Keeler Brass also proximately caused the injury, you should find for the plaintiff, because both causes were proximate causes. And if you so find, you should assess the whole damages against the defendant in this case and not apportion between Keeler and the defendant. The defendant has to bear it, but it can adjust it later. If, however, you find the changes made by Keeler Brass were so substantial as to supersede any other cause or causes and make such other cause remote, then you should find for the defendant."

Viewed in the context of this entire charge, the court's comment that the defendant could "adjust it later" merely directed the jury not to apportion responsibility between the defendant and Keeler Brass but to instead focus upon defendant's liability, if any, and award total damages against the defendant if liability were established, regardless of possible concurring fault on the part of Keeler Brass. Any possibility that the jury might have been misled into believing they should hold defendant liable even if its negligence or product defect did not proximately cause plaintiff's injuries was unequivocally laid to rest by

the court's later clarifying instruction, prompted by defendant's objection:

> "Members of the jury, you are not to speculate as to whether there would ever be any adjustment between Keeler Brass and Bliss. You are not to speculate on that at all, and strike from your mind that comment that I made in that respect, because all you are involved in here is that if you find the defendant is guilty of proximately causing the injuries to the plaintiff in any of the particulars which have been described, then it is liable for the full amount of the damages as far as you are concerned, and that ends it as far as you are concerned."

Especially in light of this clarification, the jury could not have underestimated the requirement that all essential elements of liability be established against the defendant before damages could be awarded.

■ Defendant's fourth objection is that the court erred in charging the jury that defendant should be presumed to be an expert in all matters relating to the punch press that it manufactured. This objection is insubstantial because it was not raised at trial, it relates to a charge given only in connection with the implied warranty instruction and it is a reasonable, sound and well established expression of the applicable law. Boyl v. California Chemical Co., 221 F.Supp. 669, 674 (D.C.Ore.1963); Braun v. Roux Distrib. Co., 312 S.W.2d 758 (Mo. 1958); Moren v. Samuel M. Langston Co., 96 Ill.App.2d 133, 237 N.E.2d 759 (1968).

> "A manufacturer is held to the degree of knowledge and skill of experts, Dunham v. Vaughan & Bushnell Mfg. Co., 86 Ill.App.2d 315, 299 N.E.2d 684. This standard imposes upon the manufacturer the duty of an expert to keep abreast and informed of the developments in his field, including safety devices and equipment used in his industry with the type of products he manufactures." Moren v. Samuel M. Langston Co., supra, at 765.

■ Defendant further objects to the court's reference to liability based on machine malfunction, since the evidence at trial did not support an inference of malfunction in this case. Once again the objection pertains to a portion of the court's charge which explained implied warranty, not negligence. The court's only reference to "malfunction" was included incidentally in an instruction designed to inform the jury of the proper role of circumstantial evidence.

> "You have been instructed that there are numerous ways in which a product may be defective. A defective condition must be proven by Miss Powell by use of either direct or circumstantial evidence, as I have illustrated to you. Direct proofs have been introduced on the issue of dangerous design, failure to warn and failure to guard. However, in a complicated product it is often impossible for a plaintiff to present direct evidence of the mechanical cause of malfunction, and evidence must be circumstantial." Bronson v. J. L. Hudson Co., 376 Mich. 98, 135 N.W.2d 388 (1965).

This instruction did not prejudice the defendant. That portion of the instructions which explained the kinds of product defect which could trigger implied warranty liability did not mention mechanical malfunction. Surely any ambiguity which might conceivably have been raised by the challenged instruction was erased by the court's subsequent unequivocal statement that: "There is no substantial evidence in this case of a malfunction of the machine."

Defendant's sixth point with respect to the jury instructions in this case deals with the court's asserted statement that a defect in the press could be presumed from the fact the accident happened. Again, product defect instructions dealt with implied warranty and not the negligence theory upon which the jury grounded liability. The court's instruction on negligence literally commenced with an explicit repudiation of the concept to which defendant objects: "The mere fact that an accident happened,

considered alone, does not as a rule permit the jury to draw inferences that the accident was caused by anyone's negligence." As a final word on this point, the court notes that defendant's objection in this regard was not articulated at trial.

■ Defendant's final exception to the court's charge relates to the instruction on contributory negligence. The language in issue was delivered as follows:

"Contributory negligence is only a good defense if it is a proxi..ate cause of the injury claimed. However, you should bear in mind that plaintiff as an operator—or, you should bear in mind that if you find the plaintiff, as an operator of the defendant's punch press, in order to operate it was required by the very nature and construction of the machine to place her hands in the danger area and to do so as a part of the operation of the machine, this you may find would not be negligence, but this likewise is a question of fact for you to decide from all the evidence in the case."

These comments of the court clearly served merely to explain the proposition that plaintiff could not be considered negligent merely by virtue of the fact that she allowed her hands to be beneath the ram of the press if, in fact, her normal job function required her to so position herself. This instruction was certainly not improper. See Byrnes, supra.

■ As additional basis for its motion for new trial, defendant contends that the jury's finding of liability based on negligence cannot be reconciled with its rejection of the implied warranty theory. This argument is simply untenable. Even if the jury did expressly reject the implied warranty cause of action, which they did not, a verdict on negligence would be perfectly acceptable. However, the overriding point here is that the jury did not so act. The two theories of liability were separately pled and separately explained to the jury. The court stressed that liability could be based upon either theory. No one can safely speculate as to what exactly transpired inside the jury room. Some or all of the jurors may very well have abandoned consideration of implied warranty simply because of a reluctance to cope with the complexity of that theory and their conviction that liability based on negligence was demonstrated. Regardless of such speculation, the clear fact is that the jury, after considering all of the evidence and being instructed on the theory of negligence, returned a verdict for plaintiff based on negligence. This verdict should not be overturned.

Defendant makes a further point, labeled "E" in its motion, which reasserts defendant's complaint about the court's instruction on intervening cause and the interrelationship of defendant and Keeler Brass. This argument is again deemed inadequate to support defendant's motion, for the reasons indicated above.

Defendant finally advances the proposition that due to the court's misleading suggestion about defendant's rights vis-a-vis Keeler Brass, it was error not to instruct the jury as to the actual legal relationship between these companies. For reasons stated above, the court ruled at trial and retains the judgment that no such instruction was necessary or proper. The requested charge would be highly prejudicial to plaintiff for reasons well recognized in law. Plaintiff was and is entitled to a jury deliberation undistracted by consideration of insurance schemes and irrelevant auxiliary compensation sources. As explained above, defendant was not prejudiced by the court's instructions on this point, especially in light of the supplemental instruction given following defense counsel's similar objection at trial. This court must presume that the jury followed the law as it was given to them and refused to speculate on the relationship between Keeler Brass and Bliss.

In sum, fact questions as to negligent design, negligent failure to warn, breach of implied warranty and proximate cause were properly laid before a jury

in this case. That jury returned a verdict for plaintiff on the basis of negligence. Since those few instructions relevant to this verdict which were the subject of timely trial objection are not well founded in law, in the judgment of the court, defendant's motions for judgment n. o. v. and new trial must be and are hereby denied.

It is so ordered.