MARIO CORTEZ SOTO *et al.*, Plaintiffs-Appellees, *v.* E. W. BLISS DIVISION OF GULF & WESTERN MANUFACTURING COMPANY, Defendant-Appellant.

First District (5th Division)   No. 82—0614

Opinion filed June 17, 1983.—Rehearing denied September 1, 1983.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Harry J. O'Kane, Edward J. Kulkey, and Mark L. Karasik, of counsel), for appellant.

Jack Ring, Ltd., of Chicago (Jack Samuel Ring and Richard L. Wattling, of counsel), for appellees.

JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from a judgment on a verdict for plaintiffs in their strict liability action seeking damages for injuries sustained by plaintiff Mario Cortez Soto (Soto)[1] while working on an allegedly defective punch press. Defendant contends that (1) either its motions for a directed verdict or its motion for judgment notwithstanding the verdict should have been granted because plaintiffs failed to establish the elements of their action; (2) the sanction imposed for failure to produce a witness was improper; (3) numerous trial errors and improper argument of plaintiffs' counsel deprived it of a fair trial; and (4) the jury was improperly instructed.

It is the position of plaintiffs, as alleged in the pleadings, that defendant manufactured and sold a punch press to Soto's employer which was unreasonably dangerous in that (a) after the stop button was pushed the flywheel continued to rotate while coasting to a stop and, during this coasting period, the press could be tripped, and (b) no warnings of this dangerous characteristic were given. It was further alleged that this unreasonably dangerous condition existed when the press left the control of defendant and was the proximate cause of Soto's injury.

Evidence pertinent to the issues raised on appeal was presented only by plaintiffs. In substance, Soto testified that he began working in May 1974 as a punch press operator on a partial-revolution press. Two months later, he was assigned to a full-revolution punch press which was activated by a foot pedal—differing from the partial-revolution press which would activate only after two palm buttons were pressed. While Soto was given operating instructions by his employer concerning the full-revolution press, he stated that there were no warning signs of any kind on the press. During his second day of work on the machine and in compliance with the instructions he had been given on how to clean the press, Soto said that he pushed the

---

[1]Plaintiff Maria Feliciano Soto sought damages for loss of consortium.

stop button expecting the press would come to a complete stop. He then picked up the guard in front of the press and placed it in its upper ridge and had started cleaning when the guard fell and struck him on the head. He was so startled that he stepped on the foot pedal and the ram came down on his left hand.

Plaintiffs' expert witness testified that on the full-revolution press the stop button disconnects the electrical power to the drive motor, but the flywheel continues to rotate before it finally coasts to a stop. The machine could be tripped by the foot pedal at any time while the flywheel was coasting. The machine did not have a drive motor interlock, costing about $50, which would have prevented the activation of the machine while the flywheel was coasting and which could have been incorporated into the press during its design and manufacture. The installation of such an interlock would not have affected any of the various uses to which the press could be put. Drive motor interlocks were available when the press in question was manufactured and sold, and it was his opinion that the full-revolution press in question was unreasonably dangerous, for several reasons, including (a) after the stop button was pressed the flywheel would continue to rotate while coasting to a stop, and if the foot pedal was depressed during the coasting period the machine could be tripped, and (b) there was no warning of this characteristic on the press or in the manual provided for it.

Peter Bosch, manager of product liability for defendant, in a section 60 examination, testified that when the stop button on a partial-revolution press is pushed, the press will stop and it cannot be activated by contact with the foot pedal because the electric current is cut off from the motor control. However, when the stop button on a full-revolution press such as the one involved here is pushed, the flywheel continues to rotate while coasting to a stop and contact with a foot pedal will activate the press. Defendant was aware prior to the sale of the machine in question that its presses would have to be cleaned and, if a press had a guard, it would have to be lifted to clean the die area. The press in question was sold by Bliss with no warning that the flywheel would continue to rotate after the stop button was pushed or that it could be activated during the coasting period. He also said that neither a drive motor interlock nor any other device was attached to the press to prevent activation during the coasting period.

OPINION

■ Defendant initially contends that the necessary elements of

plaintiffs' action were not established and thus that the court should either have directed a verdict or entered judgment notwithstanding the verdict. It is settled that to recover under a strict liability theory, a plaintiff must establish that the injury or damage proximately resulted from an unreasonably dangerous condition of the product which existed at the time it left the manufacturer's control. *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.

Under the *Pedrick* standard (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504), the issue presented by defendant's contention that either a directed verdict or judgment notwithstanding the verdict should have been entered is whether the evidence, when viewed in its aspect most favorable to plaintiffs, so overwhelmingly favors defendant that no contrary verdict based on this evidence could stand under the theory advanced by plaintiffs.

In support of its contention that plaintiffs did not prove the necessary elements of strict liability, defendant makes several arguments. Initially, he states that "the Record contains no testimony that the product was in the same condition at the time it left the manufacturer's control." We see no merit in this argument. While it is correct, as defendant states, that Soto's employer added four or five different clutches, a guard, and also a foot pedal as the means of activation, we note that plaintiffs' expert gave uncontradicted opinions that the press was unreasonably dangerous (1) because it could be activated while the flywheel was coasting after the button was pushed; and (2) because it lacked any warning of this condition. He also gave testimony, which was not contradicted, that the attachment of a drive motor interlock not only would have prevented the activation of the press but also would not have affected any use of the press. Moreover, Bosch, defendant's manager of product liability, admitted that the press could be activated while the flywheel is coasting after the stop button is pressed and that, when defendant sold the press, there was no warning either on the machine or in its manuals that it could be so activated. Thus, we think it clear that this condition of the press with no warning thereof was the same when the press left the control of defendant as it was at the time of Soto's injury.

Defendant also argues that it had no duty to add the drive motor interlock to the press. While it is clear that a manufacturer has a nondelegable duty to provide a product which is reasonably safe (*Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364, 385 N.E.2d 690), defendant, relying primarily upon *Rios v. Niagara Machine & Tool Works* (1973), 12 Ill. App. 3d 739, 299 N.E.2d 86, *aff'd* (1974), 59 Ill. 2d 79, 319 N.E.2d 232, maintains that it had no duty to provide the

drive motor interlock or any other safety device because the press was multifunctional in nature. In *Rios*, the plaintiff was injured while operating a punch press which he alleged was unreasonably dangerous because it was not equipped with adequate safety devices. This court held that because the machine was multifunctional, different types of safety devices would be required to obtain reasonable safety in performing those various functions and, under such circumstances, no duty should be imposed upon the manufacturer to provide safety devices. The supreme court, however, although it affirmed, stated that the multifunctional nature is only one factor to consider in determining whether a product is unreasonably dangerous and that it would not necessarily be decisive of whether there was a duty to provide safety devices.

It is our view that *Rios* is not controlling here because it is undisputed that none of the uses to which the press could be put would be affected by the attachment of the drive motor interlock. More persuasive is *Scott v. Dreis & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 326 N.E.2d 74, in which there was also a contention by the defendant that a verdict should have been directed for it. *Scott* was a strict product liability action involving an injury to the plaintiff while operating a press, the flywheel of which, as in the case before us, would continue to coast after the electric current was cut off, and during this coasting period the press was activated. The evidence disclosed that a simple lock-out device could have been attached to prevent the ram from descending during the coasting period after the current was turned off. The defendant contended that it had no duty to provide such a device because of the press' multifunctional nature. The court disagreed, stating that because the defect (the fact that it could be activated after the electric current was off) was unrelated to the multifunctional aspect of the machine, the no-duty rule of *Rios* was not applicable.

Under the circumstances in the case before us, we hold that the multifunctional nature of the press did not, as a matter of law, obviate defendant's duty to provide a reasonably safe product.

■ We also find no merit in defendant's argument that as a matter of law it had no duty to warn Soto that the press could be activated after the stop button is pushed. A product may be unreasonably dangerous if a manufacturer failed to warn or gave an inadequate warning of a condition which it knew or should have known was dangerous. (*Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 402 N.E.2d 194.) However, where an injury results from a condition of a product that is open and obvious, no warning is required (*Genaust v.*

*Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465), and the determination as to whether a duty to warn exists is a question of law (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307).

In support of this position, defendant states "the risks and dangerous propensities of the subject press is [*sic*] open and obvious; undeniably while the flywheel coasts, the press makes the same noise as when it is activated. Under this circumstance, there can be no duty to warn of the possibility of injury, since such possibility results from the common propensity of the product, a propensity that is open and obvious." Defendant appears to say that because the noise of the flywheel is the same upon activation as when coasting, the dangerous propensity of the press was obvious to plaintiff and thus that it had no duty to warn. However, we find nothing in the record to support defendant's statement as to the noise being the same, nor does defendant inform us how this sameness, if it were so, made the "dangerous propensities" of the press obvious to Soto. To the contrary, it seems to us that if the noises were alike, the danger would be less obvious to plaintiff. In any event, there was a question of fact as to whether the lack of warning rendered the press unreasonably dangerous.

We turn, then, to defendant's argument that the sole proximate cause of Soto's injuries was the conduct of his employer. It is recognized that a manufacturer can avoid all responsibility in a strict product liability action where the evidence establishes that the sole proximate cause of the injury was the conduct of another. *Nelson v. Hydraulic Press Manufacturing Co.* (1980), 84 Ill. App. 3d 41, 404 N.E.2d 1013.

Defendant posits that "[b]ecause the press was multi-functional, it was the duty of the employer to add the additional safety device [the drive motor interlock], since only the employer knew how the press was to be used." We have held above, however, that the multifunctional nature of the press in question did not obviate defendant's duty, and we therefore reject his argument that it was the sole duty of Soto's employer to add the device to the press.

■ In light of the above and viewing the evidence in its aspect most favorable to plaintiffs, we cannot say that it so overwhelmingly favors defendant that no contrary verdict based on this evidence could stand. Accordingly, we find the trial court did not err in denying defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

■ We turn next to defendant's contention that the sanction imposed against it for failure to produce an employee at trial was improper. We disagree.

Supreme Court Rule 237 governs the procedure for compelling the appearance of witnesses at trial and provides that upon failure to comply with a notice designating a person who, at the time of trial, is an officer, director, or employee of the party and is required to appear, the court may enter any order that is just, including any appropriate order provided for in Rule 219(c). 87 Ill. 2d R. 237.

On November 3, prior to the selection of the jury, plaintiffs orally supplemented an earlier notice by requesting that defendant produce an engineer employee, James Lewis, pursuant to Rule 237(b). Following an extended discussion on the relevance of his testimony, the trial court ordered that he be produced, and plaintiffs' counsel requested his presence on November 16. On that date, the court inquired of defense counsel and Bosch concerning Lewis' availability. Bosch stated that Lewis was in his office in Hastings, Michigan, awaiting a call from Detroit as to whether a trial there, in which Lewis was involved, had started. Defense counsel then stated, "I am not going to produce Mr. Lewis. I don't think I have to. *** I am refusing to produce him." Lewis was not produced, and at the close of plaintiffs' case, the court imposed the following sanction for defendant's failure to produce the witness:

> "The court holds as a matter of law that there were numerous accidents from 1867 to 1974 on the full revolution press after the motor was turned off and the flywheel was still coasting."

Defendant initially argues that this sanction was improper because Lewis' absence was reasonably explained when the court was informed of his involvement in trials on the east coast and in Detroit during the present litigation. This argument is unavailing, as Lewis was to appear in those cases only as a witness, with no showing that his presence was required by court order. Furthermore, the record discloses that from November 3, when Lewis' presence was ordered, until the close of plaintiffs' case on November 19, when the sanction was entered, defense counsel was repeatedly instructed by the court to produce Lewis and was informed that sanctions would be imposed upon his failure to do so. Nevertheless, on November 16, defense counsel told the court that he would not produce the witness.

Defendant additionally argues, relying upon *Oakview New Lenox School District No. 122 v. Ford Motor Co.* (1978), 61 Ill. App. 3d 194, 378 N.E.2d 544, that it was not required to produce Lewis because he had no personal knowledge of relevant facts. It appears to us, however, that *Oakview* is clearly distinguishable as it involved the denial of a motion to quash a Rule 237 notice on the basis that the witness had no personal knowledge of "the facts of the case." At the begin-

ning of trial in *Oakview*, the court denied the defendant's motion for leave to file an affidavit and deposition of the witness attesting to his lack of knowledge. When the defendant refused to produce the witness, a sanction was imposed barring the presentation of certain crucial evidence. On appeal, it was held that the sanction was improper, with the court reasoning:

> "[T]he record is utterly devoid of any relevant information which plaintiff expected to elicit from [the witness] at trial, but does contain numerous sworn statements declaring that [the witness] has no personal knowledge of the matters involved. In light of plaintiff's failure to assert any facts to the contrary, or to disclose what purpose would be served by requiring [the witness] to appear, we are compelled to conclude that plaintiff failed to show good cause." 61 Ill. App. 3d 194, 199, 378 N.E.2d 544, 547-48.

Here, although defendant indicated that Lewis possessed no relevant information, unlike *Oakview*, no supporting documents were presented by defendant. Furthermore, the record contains numerous statements by plaintiffs' counsel concerning the information he expected to elicit from Lewis; namely, that he had received information during the weekend before trial from an attorney in another case in which Lewis was a witness that he (Lewis) was not only knowledgeable concerning full-revolution presses of defendant but could also testify as to prior accidents and injuries to persons operating such presses, and that because Lewis had been an employee of defendant since 1949, his testimony would not be cumulative to that of Bosch, who was first employed by defendant in 1968. Moreover, Bosch, who began to work for defendant in 1968, testified that he had been informed by Lewis that between 1954 and 1964 injuries had occurred on full-revolution presses but Lewis had not told him the number of such injuries. In light of the above, we conclude that defendant was not justified in refusing to produce the witness.

Defendant also argues that the sanction was improper in that it introduced evidence of accidents which were not "substantially similar" to the instant occurrence. Although evidence as to a prior accident to be admissible does not have to occur in an identical manner, substantial similarity is required. (*Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 396 N.E.2d 534.) Here, the sanction limited the accidents to a period prior to the occurrence in question and to those occurring on a "full revolution press after the motor was turned off and the flywheel was still coasting." While there appears to have been no specific evidence concerning accidents involving, as here,

hand and arm injuries to operators of defendant's full-revolution presses prior to the date the press in question was manufactured, there was evidence of accidents and injuries prior to that time when such presses were activated while the flywheel was coasting after the stop button was pushed.

In *Rucker v. Norfolk & Western Ry. Co.*, evidence of prior accidents involving 42 punctures of a certain type of tank car was admitted for the purpose of showing the danger in the design of those cars. While 26 of the accidents involved punctures by the couplers of other cars, which was the situation in *Rucker*, other reasons were the cause of 16 punctures, and defendant contended that there was a failure to show that those 16 were substantially similar to the situation in *Rucker*. The court stated:

> "The point sought to be made by plaintiff in introducing the evidence is that the car is susceptible to puncture without a head-shield. Whether the puncture was by coupler or other means is irrelevant. The circuit court, in its discretion, therefore could have determined that all 42 accidents were sufficiently similar and relevant to the issue of whether the car was dangerous. It need not be shown that the accidents occurred in an identical manner. Substantial similarity is all that is required." (77 Ill. 2d 434, 441, 396 N.E.2d 534, 537-38.)

We think the evidence here satisfies the substantial similarity requirement as set forth in *Rucker*.

Finally, we note that the imposition of this sanction was based on evidence presented in the record as well as by consent of defense counsel. Bosch, when asked whether he knew of any case "prior to 1974 where an individual would push a Stop button and the flywheel would continue to turn and they were injured by the press, and depressing the foot pedal on the full revolution press," responded that "there have been such incidents." We also note a statement by defense counsel that "I think the only sanction that could be entered is that there were numerous accidents on full revolution clutch presses" and that while plaintiffs' counsel suggested limiting the court's ruling to the years 1954 to 1967, the dates 1867 and 1974 were inserted at the suggestion of defense counsel.

We conclude, therefore, that under these circumstances the court did not err in entering the sanction against defendant.

Defendant next sets forth a number of instances in which it contends that the trial court erred in denying its motions for a mistrial. The first such instance concerns alleged improper questioning of Bosch by plaintiffs' counsel as to (a) complaints relating to foot trea-

dles on presses when there was no foot treadle placed by defendant on the press involved and (b) whether defendant was aware that air valves would stick if not properly maintained when this information was immaterial. In each situation, however, the trial court sustained defendant's objections and barred such inquiry by plaintiffs, and because we see no prejudice to defendant, we find that the court properly denied the motion for mistrial made in reference thereto.

■ Next, defendant asserts error in the denial of its motion for a mistrial after Soto broke into tears for the third time in the presence of the jury. It argues that this conduct prejudiced the jury, as indicated by the verdict for plaintiffs. "[E]motional outbursts *** by a party to a personal injury action do not constitute grounds for a mistrial where (1) such conduct was neither intentional, simulated, nor improperly motivated and (2) its effect or impact is not so prejudicial as to have an unquestioned influence upon the jury's ability to try the issues fairly" (*Costello v. Chicago Transit Authority* (1976), 40 Ill. App. 3d 461, 469-70, 352 N.E.2d 417, 424), and this determination rests within the discretion of the trial court (*Costello v. Chicago Transit Authority*). Here, there is nothing in the record to indicate Soto's tears were improperly motivated or that the jury's verdict was influenced by his displays of emotion. Therefore, we see no abuse of discretion in the denial of the motion for a mistrial.

Defendant also argues that Bosch was improperly examined concerning certain repair orders. Defendant, in its objection, stated that plaintiffs' counsel "is categorizing these as repair orders trying to insinuate that Bliss went out and repaired the press." The objection was sustained and, again, because we find no prejudice to defendant, we view the motion for mistrial to have been properly denied.

Next, defendant maintains that a mistrial should have been granted after plaintiffs' counsel alluded to the *Powell* case (*Powell v. E. W. Bliss Co.* (W.D. Mich. 1972), 346 F. Supp. 819), because it created the inference that other accidents occurred in the same manner, and there was no showing that the *Powell* accident was substantially similar to that in the present case. We note, however, that both accidents involved hand and arm injuries when defendant's full-revolution presses were activated while the flywheel was coasting after the stop button was pushed. In light of our holding above, that other accidents occurring under such circumstance are substantially similar, we find no merit in this contention.

Defendant then maintains that the testimony of plaintiffs' expert as to seeing an electrical interlock on a 1954 full-revolution press of defendant created an inference that it had manufactured a press at

that time with a drive motor interlock. In our view, any possible prejudice created by this statement was cured by the following direction to the jury:

"THE COURT: Ladies and gentlemen, on the press that had been mentioned before the recess, there is no evidence that Bliss put a solenoid mechanical interlock [drive motor interlock] on the press and therefore this will not be considered by the jury."

■ Further, it is also our belief that during defendant's cross-examination of plaintiffs' expert, the trial court cured any prejudice resulting from plaintiffs' objection to questions pertaining to ANSI (mechanical power press code) which, defendant argues, created an inference that the press did not comply with the code. The court stated: "The jury is so instructed to disregard it [plaintiffs' counsel's remark that the code does not apply] and the court is allowing inquiry [concerning the code]."

■ Finally, defendant contends that its motion for a mistrial should have been granted when, during its cross-examination of Soto's employer, mention was made of prior repairs of the press which, defendant argues, created a prejudical inference that defendant makes defective presses which needed continual repair. It is our view that the court remedied any possible inference in this regard by stating to the jury that he had gone over the repair records of the press in question with the attorneys and they revealed that a series of repairs from 1964 to 1966 were unrelated to the accident in question, and that from 1966 to the time of the accident here, there was only one other repair, which was also unrelated. We conclude that any possible prejudicial effect of the answers by Soto's employer was cured by the court's action. Accordingly, we find no error in the failure to grant any of defendant's motions for a mistrial.

■ Defendant also contends that plaintiffs' counsel made improper prejudicial comments during closing arguments. Improper comments generally do not constitute reversible error unless the defendant has been substantially prejudiced thereby (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200) and "although the prejudicial effect of an improper argument cannot always be erased from the minds of the jurors by an admonishment from the court (*People v. Garreau* (1963), 27 Ill. 2d 388, 391), the act of promptly sustaining the objection and instructing the jury to disregard such argument has usually been viewed as sufficient to cure any prejudice" (76 Ill. 2d 19, 30, 389 N.E.2d 1200, 1205-06). Furthermore, the trial court is in a superior position to evaluate the effect of the alleged improper com-

ments upon the jury (*People v. Brown* (1982), 107 Ill. App. 3d 576, 437 N.E.2d 1240), and its ruling on such remarks will not be disturbed by a reviewing court absent a finding that its discretion was abused (*People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 390 N.E.2d 1339).

We note, after examining the numerous instances of alleged improper comments which defendant has called to our attention, that in each case the trial court either promptly sustained defense counsel's objection and admonished plaintiffs' counsel or the latter clarified his comments to the satisfaction of defense counsel, and where defense counsel objected that plaintiffs' counsel was misstating the law, the court either clarified the law and/or stated that it would instruct the jurors as to the matters they should consider.

While many of plaintiffs' counsel's comments were improper, in view of the above stated action by the court and plaintiffs' counsel, we do not believe that defendant was so prejudiced by them either individually or cumulatively as to have been denied a fair trial. We conclude that the comments do not warrant reversal.

■ Defendant's final contention concerns jury instructions. It first argues that the court erred in refusing its instruction No. 18, stating as follows:

> "The fact that the full revolution press complied with the American Safety Standards Institute (ANSI), the National Safety Council Power Press Code, and the Occupational Safety and Health Act (OSHA), may be taken into consideration by you in determining if the full revolution press was unreasonably dangerous. Whether the full revolution press was unreasonably dangerous and was the sole proximate cause of plaintiffs' injuries is for you to decide."

We find that the court properly refused this instruction for each of the following reasons. First, it uses the term "sole proximate cause" and it is settled that in a strict product liability action the plaintiff need only prove that the condition of the product was "a" proximate cause of the injury. (*Lundy v. Whiting Corp.* (1981), 93 Ill. App. 3d 244, 417 N.E.2d 154.) Thus, to the extent that the instruction indicates plaintiffs were required to establish that an unreasonably dangerous condition of the press was the sole proximate cause of Soto's injuries, it was incorrect. Second, the tendered instruction improperly assumed as true the fact that the press was in compliance with the safety standards mentioned. Where a tendered instruction is equivocal and can be viewed as accepting facts which are in dispute, it is properly refused. (*Pioneer Hi-Bred Corn Co. v. Northern Illinois*

*Gas Co.* (1975), 61 Ill. 2d 6, 329 N.E.2d 228.) While defendant states that plaintiffs' expert and defendant's witnesses, Grant and Barriga, testified that the press complied with those standards, it cites no record references in support thereof, and our examination of the record reveals that none of those witnesses so testified. Plaintiffs' expert, on cross-examination, stated that ANSI required an interlock press barrier guard, and that when he examined the press there was such a guard on it; however, when asked whether the press complied with the 1971 ANSI code, he replied, "I don't know." He also stated that when he examined the press in 1975, it was not in compliance with OSHA because the opening under the front gate was excessive, but did admit that if the opening was reduced the press would have been in compliance with OSHA "for operating the machine." Nowhere, however, is there any acknowledgment by either plaintiffs' expert, Grant, Barriga, or any other witness that the press complied with the provisions of the standards mentioned in instruction No. 18. Third, even assuming that there was undisputed testimony that the standards were complied with, no particular provision in any of them was brought to the attention of the jury, and there is nothing in the record to indicate that any provision had any relevance to the fact that the press could be activated while the flywheel was coasting after the stop button was pushed.

Defendant next maintains that the court erroneously gave plaintiffs' instruction No. 16:

"Now the court instructs you that Bliss has the obligation to manufacture and sell a product which is not in an unreasonably dangerous condition.

Since that obligation cannot be delegated to another, it is not a defense for the manufacturer that another person, including Plaintiff's employer, failed to make it free from the unreasonably dangerous condition.

Now when I use the term 'cannot be delegated' in these instructions, I mean that the duty must be performed by Bliss and cannot be left to some other person or individual, including Plaintiff's employer";

and plaintiffs' instruction No. 6, a modified Illinois Pattern Jury Instruction, Civil, No. 12.04 (2d ed. 1971):

"More than one person may be to blame for causing an injury. If you decide that the Plaintiff, Mario Soto, has proved all the propositions of his case, then it is not a defense to the Plaintiff, MARIO SOTO'S claim, that some other person may also have been to blame."

It appears to be defendant's position that instruction No. 16 was improper because there is no evidence in the record "that anyone failed to make the press reasonably safe" and that the court erred in giving instruction No. 6, because the evidence established that Soto's employer was the sole proximate cause of the injury. We reject defendant's position as to these instructions in light of our conclusions above, that plaintiffs presented jury questions as to whether the press was in an unreasonably dangerous condition when it left defendant's control and concerning whether that condition was a proximate cause of Soto's injury.

For the reasons stated, the judgment appealed from is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.