VIDA R. MACIUKEVICIUS, Plaintiff-Appellee, v. KENNETH ZAGORSKI et al., Defendants-Appellants.

First District (4th Division)   No. 87—1283

Opinion filed June 30, 1988.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (Algimantas Kezelis and Russell P. Veldenz, of counsel), for appellants.

Robert A. Rosin & Associates, Ltd., and Propp & Schultz, both of Chicago (Robert A. Rosin and Eugene Propp, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Vida R. Maciukevicius, filed an action against defendants, Kenneth Zagorski and his employer, Stevens Meat Company, af-

ter she was injured in an automobile accident in September 1981. The jury awarded her $100,810 in damages but determined that her own negligence had contributed 9% to her injury. The trial court accordingly entered judgment in favor of plaintiff in the reduced amount of $91,737.10.

Defendants appeal, contending that the verdict is against the manifest weight of the evidence; plaintiff's "emotional outburst" warranted a new trial; her attorney's conduct resulted in prejudice to defendants; and the award of damages is excessive.

We affirm.

BACKGROUND

The incident occurred on September 19, 1981, when the parties' automobiles collided near the intersection of Southwest Highway and Kedzie Avenue in Chicago, Illinois. Both drivers had turned left from Southwest Highway onto northbound Kedzie, a four-lane road, about two blocks before the collision. The right rear bumper of a delivery van driven by Zagorski became locked with the front left bumper of plaintiff's Volkswagen Rabbit. Thus joined, both cars swerved off the roadway over the right-hand curb until plaintiff's car struck a fire hydrant.

The trial testimony conflicted in several respects. In essence, plaintiff claimed that defendant drove his van into her lane without signaling, causing her car to become locked with his van. Of the two northbound lanes of Kedzie, plaintiff stayed in the outermost or right-hand lane after turning off of the highway. She first noticed the van when it was alongside her left and slightly in front of her. When defendant's van cut in front of her, she was forced off the road into a fire hydrant.

In contrast, defendant maintained that he never moved out of his lane and that plaintiff must have been attempting to pass his van. At the intersection when he turned onto Kedzie he noticed that a car was in front of him in the inner or left lane of Kedzie and he felt that traffic in general was gaining on him. He did not recall seeing plaintiff's bright yellow car behind him. He felt an initial impact when the two vehicles locked together. His van was forced toward the left into oncoming traffic and then the car dragged the van toward the right-hand curb, where he felt a second impact as the Volkswagen struck the hydrant.

A police officer who had spoken to the parties and another witness at the scene of the collision testified that plaintiff had told him that she attempted to pass the van on the right when the bumpers

hooked. Defendant had told the officer that he felt an impact and then saw that the plaintiff's car had become hooked with his. The officer concluded that plaintiff had tried to pass on the right and that after the two vehicles had linked, their combined weight had pushed them over onto the curb.

On cross-examination, however, the officer acknowledged that he had investigated over 1,000 accidents since the one in issue. While he had testified from independent recollection that the defendant's van was blue, he admitted being shown photos of the van by defense counsel. He did not remember the color of plaintiff's car. The officer also stated that he had reviewed his police report with defense counsel before trial. The police report was blank in the section labeled "Explanation of Accident," where statements of parties would normally go. The police report also lacked a diagram of the accident, although a space is provided for such depictions.

The police officer finally acknowledged that he could have been mistaken as to what plaintiff had said and that the physical evidence that he observed was consistent with either party's theory of the occurrence.

Plaintiff's medical evidence was presented through two physicians, Dr. Jonas Byla and Dr. Robert Scapino. Dr. Byla is a board-certified neurologist. He first met plaintiff approximately one year after the collision. She had noticed headache and neck and lower back pain immediately after the impact, as well as dizziness and nausea. After treatment in the emergency room of a hospital, she had been under the care of her family doctor. Her doctor ultimately referred plaintiff to Dr. Byla.

Plaintiff complained to Dr. Byla of continuing jaw pain as well as pain in the cervical spine and lumbar regions. Dr. Byla treated plaintiff with muscle relaxants and referred her for physiotherapy, which included massage, cervical traction, and injection of anesthetics directly into the areas of pain and spasms. The doctor diagnosed plaintiff's condition as fibromyositis, or muscle spasms, a chronic condition causing a limitation of motion and pain. At the time of trial, plaintiff's prognosis was "guarded" and Dr. Byla testified that her muscle inflammations and fibromyositis are permanent conditions directly and causally related to the injuries she suffered in the auto accident.

Dr. Scapino testified regarding plaintiff's temporomandibular joint dysfunction, an internal derangement of the jaw joint. In his opinion, the condition was caused by the collision. The condition causes pain and jaw dysfunction which affects plaintiff's ability to open her mouth and chew. He further testified that her jaw condition appeared to be

permanent. Dr. Scapino stated that there is a correlation between the cervical muscle spasms plaintiff suffers and the jaw condition. He concluded that she will require continuing treatment for her condition in the future.

Plaintiff testified as to her injuries and the resulting restrictions on some of her activities. She related her loss of income attributable to the accident and the damage sustained to her car.

OPINION

I

■ Defendants challenge the sufficiency of the evidence to support the jury's determination that defendants were 91% liable for plaintiff's injuries. According to their interpretation of the evidence, Zagorsky "had no reason to change lanes and plaintiff has offered none." Plaintiff, however, may have been in a hurry to get home after meeting friends at the beach; that would explain her attempt to pass the van on the right. Moreover, the physical evidence is consistent with Zagorski's version of the facts because the scraping damage on the van is "consistent only with a vehicle passing another on the right. In other words, a side swipe." Finally, the police officer gave his opinion that plaintiff had passed on the right and plaintiff herself had admitted it to him. Moreover, plaintiff's mother, who was supposedly present during this admission, failed to testify and the jury accordingly should have assumed that the mother's testimony would have been unfavorable to plaintiff.

We find each of these assertions unpersuasive. The reasons why either driver may have changed lanes are unimportant in this case; what matters is whose driving, based on the evidence, the jury believed was instrumental in causing the accident. The jury found plaintiff's testimony of greater credibility than defendants'. The record, including photographs of the damaged vehicles, does not undercut plaintiff's version of the events, nor require the inference that she was passing the van improperly. Defendants did not offer reconstruction evidence by expert witnesses that would enhance the probabilities that the scraping damage on the van was caused by plaintiff's attempt to pass as opposed to defendant's cutting her off by entering her lane. The police officer's direct testimony was substantially undermined on cross-examination. As for the mother's failure to testify, if the jury were entitled to draw any inference from that, it would have been so instructed and neither party raises any issue with regard to the jury instructions.

We conclude that the evidence is sufficient to support the jury's conclusion that defendants were 91% liable for plaintiff's injuries.

## II

■ Defendants next charge that plaintiff's "emotional outburst" warranted a new trial. According to defendants, plaintiff started to cry in front of the jury as she described the damage to her car. Defense counsel called for a side bar to alert the judge to the situation, but the judge admitted that he had not noticed. Out of the jury's presence both counsel debated what had actually occurred. The court noted that plaintiff's face was red and that she had cried in chambers, but did not know whether she had cried in front of the jury.

At that point, one of plaintiff's medical witnesses, Dr. Byla, was allowed to testify out of order as an accommodation to him. Defendants allege that this "interruption" underscored the prejudicial effect of plaintiff's emotional display because it might have appeared that she was unable to continue testifying. Defendants moved for a mistrial, which was denied.

We disagreed that the plaintiff, who may have been flustered and nervous, broke down or lost such control that the jury would have been unduly influenced or sympathetic. From our examination of the pertinent transcript passages, the trial judge was unaware that the plaintiff was crying on the stand, a matter that he would presumably notice if her loss of composure was indeed an "emotional outburst." In any event, the trial judge was in the best position to assess whether defendants' objection had any merit. Moreover, emotional outbursts by parties to personal injury cases are not grounds for mistrial where such conduct is neither intentional nor simulated and its effect is not so prejudicial as to have indisputably affected the jury's ability to try the case fairly. *Costello v. Chicago Transit Authority* (1976), 40 Ill. App. 3d 461, 352 N.E.2d 417; *Soto v. E. W. Bliss Division of Gulf & Western Manufacturing Co.* (1983), 116 Ill. App. 3d 880, 452 N.E.2d 572 (no abuse of discretion in denying motion for mistrial even though plaintiff broke into tears three times).

■ The court's allowance of Dr. Byla's testimony before plaintiff's had concluded, moreover, was a proper exercise of discretion, particularly since scheduling accommodations are frequently desirable or necessary during the course of trial. The record reveals that both sides had agreed the previous day to allow the interruption of plaintiff's testimony. Furthermore, the judge indicated in open court that plaintiff was being temporarily withdrawn, so as to allow the doctor to proceed as a matter of scheduling accommodation. We find no

abuse of discretion by the court, nor prejudice against defendants.

## III

■ Defendants next isolate two instances in which plaintiff's counsel supposedly engaged in prejudicial conduct that denied them a fair trial. First, they contend that plaintiff violated an *in limine* order, the purpose of which was to preclude any mention that she had received a traffic ticket. In plaintiff's cross-examination of the police officer, plaintiff had asked him whether he had prepared any written documents other than the police report, to which the witness answered, "No." On its own motion, the trial court called for a side bar to admonish plaintiff's counsel against asking questions that might violate the order. In chambers the defense requested permission to elicit testimony to correct the false impression that plaintiff had not received a ticket. The court acknowledged that plaintiff's question may have opened the door and was improper but that to allow any further questioning on traffic tickets would be too prejudicial.

We are unpersuaded by defendants' argument that they were denied a fair trial because the jury may have erroneously inferred that plaintiff had not received a traffic citation. Such evidence is inadmissible because it is considered immaterial and prejudicial; if the ticketing officer is not an eyewitness, his decision to issue tickets may well be influenced by hearsay statements. In the context in which plaintiff's counsel asked the question, moreover, the jury may have interpreted the witness' answer as limited to the preparation of the police report, which contained blank areas.

We further find no reason to assume that plaintiff meant to violate the order entered at her own request. It was not in her interest to ask a question that the police officer could answer by stating that he had issued her a ticket. Had he so replied, plaintiff would have had to live with the results, as the one who had elicited the answer in violation of the order. If the officer was confused by the question, moreover, he could have asked the court for directions. We find it more plausible to assume that plaintiff had no intention of eliciting an improper answer from the officer but that she was simply following a line of questioning relating to the completeness of the police report.

Furthermore, any error would be harmless; for the jury to infer that no tickets were issued would mean that it must infer that defendants received none either.

Since we find no deliberate or knowing violation of the *in limine* order and no prejudicial error in the answer to a single question out of many, we conclude that defendants were not denied a fair trial.

■ Defendants further contend, however, that plaintiff's counsel deprived them of a fair trial by leading the jury to believe that they were hiding evidence. This assertion is based on what defendants characterize as plaintiff's repeated attempts to force defendants to object by asking improper questions. Even though many of their objections were sustained, defendants contend that the jury was left with an improper impression that defendants were concealing important information from them.

We have reviewed the challenged questions and objections. Without expressing an opinion as to the correctness of the court's rulings on specific objections, we find that the line of questioning (primarily concerning the medical testimony) was not so far out of line as to constitute improper conduct on the part of plaintiff's counsel. Instead of believing that defendants were concealing evidence, the jury in such a situation could just as well conclude that plaintiff's counsel was unable to ask a proper question. Since the trial court is in the better position to judge the effect of allegedly improper comments (*Soto v. E. W. Bliss Division of Gulf & Western Manufacturing Co.* (1983), 116 Ill. App. 3d 880, 452 N.E.2d 572), we will not second-guess its belief that the jury was not misled and that defendants were not denied a fair trial.

### IV

■ Defendants finally argue that the award of damages is excessive. They challenge the medical testimony, stating that there was no evidence presented as to plaintiff's medical bills. Furthermore, the most serious injury, the jaw problem, was not sufficiently linked to the accident because she did not seek treatment until a year after the accident.

We believe that the record contains sufficient testimony as to the nature, extent and duration of plaintiff's injuries to sustain the jury's verdict. Dr. Byla discussed in detail plaintiff's prolonged course of medical treatment for her fibromyositis condition, which he concluded permanently restricted her motion and activity. He related plaintiff's history, including the onset of jaw problems. Dr. Scapino diagnosed plaintiff's jaw problem as a permanent derangement of the jaw joint, which was worsening. He testified that the condition was causally related to the automobile accident, in his opinion. The jaw injury is in an early stage of arthritis and plaintiff continues to receive treatment by Dr. Scapino and a neurologist.

The jury's award took into account the nature and severity of plaintiff's permanent injuries. Her life expectancy at the time of trial

was 53 more years. She had suffered pain from her conditions for 5½ years since the date of the accident.

The verdict was itemized, a further indication that the jury based each element of the award on a specific item of damages. We conclude that the evidence supports the award on each item and that the total is not excessive.

For the foregoing reasons, we affirm the judgment entered upon the jury's verdict, finding in favor of plaintiff in the amount of $91,737.10.

Affirmed.

JOHNSON and McMORROW, JJ., concur.