OAKVIEW NEW LENOX SCHOOL DISTRICT NO. 122, Plaintiff-Appellee, *v.* FORD MOTOR COMPANY *et al.*, Defendants-Appellants.

Third District   No. 77-221

Opinion filed June 28, 1978.

Baker & McKenzie, of Chicago, and Robson, Masters, Ryan, Brumund & Belom, of Joliet (Francis D. Morrissey, Harry J. O'Kane, and James E. Babcock, of counsel), for appellants.

E. Kent Ayers and Gerald R. Kinney, both of Murphy, Timm, Lennon, Spesia & Ayers, of Joliet, for appellee.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Ford Motor Company appeals from a judgment entered in favor of Oakview New Lenox School District in the Circuit Court of Will County in a property damage suit arising out of a school bus accident. The facts are not in dispute.

In May 1969, the Oakview New Lenox School District ordered a new 66 passenger school bus from Cooper Show Ford, a Ford dealer located in Frankfort, Illinois. The Ford Motor Company built the chassis which was then sent to Lima, Ohio, where the Superior Bus Company attached a Superior bus body to the Ford chassis. From Lima, the bus was driven to the dealer in Frankfort where it successfully underwent a safety inspection as required by the Office of the Superintendent of Public Instruction. The bus was delivered in New Lenox on September 2, 1969, at which time the odometer registered 312 miles. That night the superintendent of schools drove the new bus around the school parking lot with the members of the school board as passengers. On September 5, Dorothy Vangor, an experienced school bus driver, drove the new bus a distance of approximately one mile to a service station for gasoline and back to the parking lot. The bus remained parked in the parking lot in front of the school under flood lights from the date of delivery until the first day of school except for the two trial runs.

On the first day of school, September 8, 1969, Mrs. Vangor drove the bus on her regular route. Later that day, about 11 a.m. during the course of her second run of the day and while transporting 45 kindergarten students, she drove north on Cedar Road, a two-lane blacktop highway, past a T-intersection where she stopped, backed into the intersecting road and then proceeded south until she saw a State highway truck with flashing lights ahead. As she gently depressed the brake pedal to slow down, the bus went out of control into a shallow ditch to the right of the road. After removing the children from the tilted bus, Mrs. Vangor inspected the undercarriage of the bus and saw that the axle was disengaged and the righthand U-bolt, which fastens the axle to the spring, lacked nuts. Mrs. Vangor denied striking any bumps or holes prior to the accident and said she was driving between 15 and 20 miles per hour in a third gear at the time of the accident.

A short time later the school superintendent, Arnold Tyler, and the district's transportation coordinator, Patricia Bally, arrived at the scene, and each inspected the bus. Tyler saw that the front wheels were shoved back under the front of the bus while Mrs. Bally saw no nuts on the two U-bolts on the right side and saw that the U-bolts were sprung. She also saw that the cotter pin was missing from the front shackle on the left side. The spring was completely detached from the frame and was on the ground. Polaroid photographs were taken at the scene which are consistent with the statements of the witnesses. After the accident the district rented a replacement bus for $784 until the damaged bus was repaired at a cost of $1808. The bus was still in use at the time of trial.

The school district filed suit against Ford Motor Company alleging that defendant Ford was liable on the basis of strict liability, negligence, wilful and wanton misconduct, and breach of warranty. In the course of pretrial discovery, defendant's answers to interrogatories were signed by D. R. Jolliffe, assistant secretary of Ford Motor Company, a resident of Michigan. Jolliffe's affidavit attached to the interrogatories stated that he is duly authorized to sign the answers to interrogatories on behalf of defendant; that the matters stated in the answers are not within his personal knowledge; that he is informed that there is no officer of Ford who has personal knowledge of such matters; that the facts stated in the answers have been assembled by authorized employees and counsel of Ford; and that he is informed by counsel that the facts so stated are true.

Prior to trial plaintiff served notice on defendant's counsel that Jolliffe's presence would be required at trial pursuant to Supreme Court Rule 237 which provides:

> "(b) Notice to parties *et al.* The appearance at the trial of a party or a person who at the time of the trial is an officer, director, or employee of a party may be required by serving the party with a

notice designating the person who is required to appear. * * * If the party or person is a nonresident of the county, the court may order any terms and conditions in connection with his appearance at the trial that are just, including payment of his reasonable expenses. Upon a failure to comply with the notice, the court may enter any order that is just, including any order provided for in Rule 219(c) that may be appropriate." Ill. Rev. Stat. 1977, ch. 110A, par. 237(b).

Defendant filed a motion to quash the notice, asserting that Jolliffe was not a resident of Illinois, that he has no personal knowledge of the facts of this case, and that his attendance at trial would be an undue hardship on him. After a hearing the trial court denied the motion to quash and filed a memorandum opinion stating, *inter alia*, that Jolliffe is one of the persons covered by Rule 237 and that plaintiff should be able to obtain its evidence before trial by an evidence deposition. The court then amended an earlier order to allow the taking of depositions of Jolliffe by either party until May 21, 1974, three weeks before the trial was to commence.

Trial was subsequently postponed until January 10, 1977, and plaintiff did not at any time attempt to take Jolliffe's deposition. Defendant filed additional motions to quash the notice to Jolliffe in June of 1974, and again in December 1976, both of which were denied by the court after a hearing. One week before trial defendant filed notices that evidence and discovery depositions of Jolliffe would be taken in Dearborn, Michigan, on Friday, January 7, but plaintiff's counsel did not appear for those depositions.

At the beginning of trial defendant indicated that Jolliffe would not be present because he knew nothing about the case, and defendant asked leave to file Jolliffe's affidavit and deposition, both of which asserted his lack of knowledge of any of the matters involved in this case. The court refused to allow the documents to be filed and reiterated that the court's previous ruling would stand.

During the course of the trial, plaintiff called Jolliffe under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60), and when he did not appear, plaintiff filed a motion for sanctions. The court ruled that defendant was required to produce Jolliffe at trial because Ford does business in Illinois and thus has submitted to the jurisdiction of the Illinois courts, that defendant failed to file Jolliffe's evidence deposition within the time allowed (by May 21, 1974), and that defendant's refusal to produce Jolliffe was wilful, deliberate and unreasonable, and was prejudicial to plaintiff. The court then, as a sanction, barred the presentation by defendant of any evidence relating to the condition of the bus chassis when it left the Ford factory and any evidence relating to whether that condition was unreasonably dangerous. After the sanction

was imposed, defendant offered to stipulate to anything plaintiff would offer to prove by Jolliffe. Plaintiff refused to stipulate.

At the conclusion of all the evidence the case was submitted to the jury on all four theories of liability alleged in the four counts of the complaint. Defendant's motion to strike the allegations of wilful and wanton misconduct was denied. The jury found for plaintiff and against defendant on all four counts and assessed actual damages of $2,632 plus punitive damages of $20,000. After the court denied defendant's post-trial motion, this appeal was perfected. Defendant challenges the order to produce Jolliffe at trial and submission of the wilful and wanton count to the jury.

Defendant contends that the trial court lacked judicial power to compel the attendance of a nonresident witness on the theory that Supreme Court Rule 237 was intended to do no more than substitute notice to a party to attend trial in place of a subpoena, but not to give the court extraterritorial jurisdiction. Defendant relies upon *Aldrich v. Maher* (1st Dist. 1910), 153 Ill. App. 413, where the trial court held Mrs. Maher in contempt for failing to attend before an Illinois master to be personally examined about her accounts as trustee. Mrs. Maher claimed that ill health prevented her traveling from Boston, Mass., to Illinois, and the circuit court held her in contempt of court. The appellate court reversed, stating that no statute gives Illinois courts any authority to compel a nonresident to appear personally within the jurisdiction of this State for examination as a witness, or to punish such a nonresident for failure to appear. Instead, the statute provides for the taking of depositions of nonresident parties and witnesses.

■■ While we do not doubt the correctness of the decision in *Aldrich v. Maher* at the time it was decided, we find it to be of little assistance here where Supreme Court Rule 237 (effective Jan. 1, 1967), now authorizes the trial court to compel the appearance at trial of a party who is not a resident of the county. Having entered a general appearance, Ford Motor Company had submitted to the jurisdiction of the Circuit Court of Will County and was subject to discovery orders entered by that court. This jurisdiction includes the power to order a corporate party to produce its officers and directors at trial. *Media Services, Inc. v. Sheraton Corp.* (1963), 79 N.J. Super. 488, 192 A.2d 166.

Defendant also argues that even if the court had authority to order Jolliffe to appear, the order here was vexatious and oppressive because he had no knowledge relating to the subject matter of this lawsuit. As the New Jersey court stated in the *Media Services* decision:

"Of course, the power [to order a party to appear] should only be exercised for good cause and in such manner that a party may

not be subjected to harassment, oppression or hardship." (79 N.J. Super. 488, 492, 192 A.2d 166, 168.)

In *Media* certain corporate officers and directors were charged with being participants in an alleged fraudulent scheme. The reviewing court found that the trial court had not abused its power in ordering them to appear at trial since it was shown that they would have knowledge relevant to the issues being litigated.

■■ In the case at bar, however, the record is utterly devoid of any relevant information which plaintiff expected to elicit from Jolliffe at trial, but does contain numerous sworn statements declaring that Jolliffe has no personal knowledge of the matters involved. In light of plaintiff's failure to assert any facts to the contrary, or to disclose what purpose would be served by requiring Jolliffe to appear, we are compelled to conclude that plaintiff failed to show good cause. While the use of Rule 237 is a matter within the trial court's discretion, such use is not without limitation. Those limits have been exceeded here, and we hold that the order requiring Jolliffe to be present at trial was erroneous, and the sanctions imposed for his failure to attend were also improper. Accordingly the judgment is reversed, and the cause remanded for a new trial.

Defendant also contends that, in the absence of direct evidence of wilful and wanton misconduct, the wilful and wanton charge should not have been submitted to the jury. Plaintiff insists that the evidence established Ford's reckless disregard for the safety of others so as to justify punitive damages. Since this issue will arise upon retrial, we shall consider it here.

Imposition of punitive damages against a corporate defendant may punish an employer vicariously where there was no evidence of active participation in the misconduct. As a general rule, mere negligence will not do; courts look for positive misconduct, conduct so outrageous as to suggest a total lack of care, to justify punitive damages.

In *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 330 N.E.2d 509, an action was brought against a bus company for the death of a minor passenger, and the jury awarded both compensatory damages and punitive damages. The appellate court vacated the punitive damages but affirmed the compensatory damages. The supreme court affirmed the appellate court, and in the majority opinion, Justice Schaefer discussed the nature and limits of punitive damages, stating:

"Moreover, the punitive and admonitory justifications for the imposition of punitive damages are sharply diminished in those cases in which liability is imposed vicariously. [Citations.] With respect to this problem, section 217C of the Restatement (Second) of Agency states:

'Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:

(a) the principal authorized the doing and the manner of the act, or

(b) the agent was unfit and the principal was reckless in employing him, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the principal or a managerial agent of the principal ratified or approved the act.' " 61 Ill. 2d 31, 36-37, 330 N.E.2d 509, 512.

■■ The following year, in an action against the corporate employer of a truck driver who was involved in an accident, the appellate court had occasion to consider the vicarious liability of a corporation for punitive damages for the wrongdoing of its employee. In *Tolle v. Interstate Systems Truck Lines, Inc.* (5th Dist. 1976), 42 Ill. App. 3d 771, 356 N.E.2d 625, the court rejected the "vicarious liability" rule that would hold the principal or employer liable for punitive damages whenever the agent or employee would be liable, and instead, following *Mattyasovszky* adopted the "complicity rule whereby the corporate master is liable for punitive damages only when the superior officers order, participate in, or ratify outrageous misconduct [citations]." (42 Ill. App. 3d 771, 773, 356 N.E.2d 625, 626-27.) The court explained its preference for the complicity rule, as follows:

"The complicity rule, on the other hand, seems consistent with the rationale behind the concept of punitive damages. Either as a basis for punishment or for deterrence of wrongdoers, some deliberate corporate participation should be shown before this sanction is applied. [Citation.] The complicity analysis will allow punitive damages where the institutional conscience of the corporate master should be aroused while protecting the corporate master from liability for punitive damages when a properly supervised employee acts with requisite circumstances of aggravation." 42 Ill. App. 3d 771, 773, 356 N.E.2d 625, 627.

■■ On the basis of these precedents, we believe the trial court erred in submitting the wilful and wanton count to the jury in the absence of any evidence of deliberate corporate participation in the wrongful act. The cases relied upon by plaintiff did not expressly consider corporate liability for punitive damages and are not applicable to this cause.

Reversed and remanded.

STOUDER and SCOTT, JJ., concur.